IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.   No.  CR-03-1663 MV

ERIC RUIZ and DIONNE EDWARDS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Joint Motion Regarding Sentencing Procedure **[Doc. No. 49]**, filed July 16, 2004. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED**.

## BACKGROUND

On July 31, 2003, a criminal complaint was filed against Defendants charging them with conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §846. On August 27, 2003, a three-count Indictment was filed against Defendants. On September 4, 2003, Defendants were arraigned and the Court entered the standard discovery order, which required the government to disclose reports of examinations and tests and expert witnesses. The order also required the government to exercise due diligence to discover any scientific tests or experiments "material to the preparation of the defense or intended to be used by the government as evidence in chief at the trial."

On September 30, 2003, Defendants received the initial production of fifty-eight pages of discovery, which included expert testing concerning the presence of actual methamphetamine. The discovery, however, did not contain any testing concerning the other alleged chemicals seized or any claim of an environmental danger or violation. On October 20, 2003, the government provided additional expert reports concerning the theoretical yield of methamphetamine.

On January 13, 2004, Defendants pleaded guilty to Count I of the Indictment, charging conspiracy to manufacture less than fifty grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §846 and 21 U.S.C. §§841(a)(1) and (b)(1)(C). On March 3, 2004, the Presentence Report ("PSR") was disclosed. The PSR provided for Defendants to pay restitution and assigned Defendants a two-level enhancement under U.S.S.G. §2D1.1(b)(5)(A), which provides: "If the offense involved (i) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance; or (ii) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, increase by **2** levels." In March 2004, Defendants made informal objections to the restitution and 2-level enhancement provision of the PSR. On May 4, 2004, Defendants filed their First Objections to the Presentence Report and Restitution, Request for Discovery and For a Bill of Particulars, which contained objections to restitution and the 2-level enhancement and requests for discovery materials in support of the enhancement and/or a bill of particulars describing the facts leading to the decision to apply the enhancement. On May 20, 2004, the government filed a Response, requesting that Defendant's objections be denied in their entirety. In the alternative, the government requested that the Court consider a 3-level enhancement pursuant to U.S.S.G. §2D1.1(b)(5)(B), which provides: "If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to (I) human life

other than a life described in subdivision (C); or (II) the environment, increase by **3** levels." Also in the alternative, the government requested that the Court consider an additional 2-level enhancement pursuant to U.S.S.G. §3C1.2, which provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by **2** levels." Thereafter, on May 21, 2004, the government provided further discovery which included the resume of the DEA chemist, the report and bill of Envirosolve and other materials regarding the application of §2D1.1(b)(5)(A). On June 23, 2004, the government provided additional discovery which included pictures of the shed and alleged chemicals that are in dispute with regard to the application of §2D1.1(b)(5)(A).

On July 16, 2004, Defendants filed the instant Joint Motion Regarding Sentencing Procedure ("Joint Motion"). In the Joint Motion, Defendants ask the Court for an order setting forth its position on the impact of *Blakely v. Washington*, 124 S. Ct. 2531 (2004), on sentencing enhancements under the United States Sentencing Guidelines (the "Federal Guidelines"). Defendants suggest that, if the Court finds that *Blakely* applies to sentences under the Federal Guidelines, the enhancements at issue here will be inapplicable and, consequently, the need for expert reports and/or testimony will be moot. Defendants ask the Court to consider the impact of *Blakely* on the issue of sentencing enhancements at this point, before they incur additional costs for expert fees.

On September 9, 2004, the Court held a hearing on the Joint Motion. At the hearing, the Court held that *Blakely* applies to the determination of sentencing enhancements under the Federal Guidelines. The government argued that, even if *Blakely* applies, the enhancements under §§2D1.1(b)(5)(A) and (B) may be applied to determine Defendant Ruiz's sentence. In support of this argument, the government asserted that the admissions that Ruiz made during his plea hearing are

sufficient to meet the requirements of *Blakely*. The Court gave the parties an opportunity to file written briefs on this issue. On September 20, 2004, Defendants filed a Supplemental Sentencing Argument and Briefing and a Memorandum Regarding Alternative Sentencing. On September 21, 2004, the government filed an Amended United States' Brief Regarding Defendant's Admissions Pursuant to *Blakely v. Washington*.

## DISCUSSION

### I.   Application of *Blakely* to the Federal Guidelines

In *Blakely,* the Supreme Court held that a Washington state trial court's sentencing of a defendant to more than the statutory maximum of the standard range for his offense of kidnaping, based on the judicial finding that the defendant acted with "deliberate cruelty," violated the defendant's constitutional right to a trial by jury. At issue was the sentence of Ralph Blakely, who pleaded guilty to the kidnaping of his estranged wife. The facts admitted in his plea, standing alone, supported a maximum sentence of fifty-three months under Washington's sentencing guidelines. The trial judge determined, however, that Blakely had acted with "deliberate cruelty," a statutory basis for imposing a sentence above the standard range under Washington's sentencing guidelines, and increased Blakely's sentence to ninety months. Blakely appealed, arguing that this sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence.

Relying on its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that, because the facts supporting Blakely's ninety-month sentence were neither admitted by Blakely nor found by a jury, the sentence violated Blakely's constitutional right under the Sixth Amendment to have a jury determine, beyond a reasonable doubt, all facts legally essential to his

sentence. *See Blakely*, 124 S. Ct. at 2543. In *Apprendi*, the Supreme Court had held that, under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; *Ring v. Arizona*, 536 U.S. 584, 602 (2002) ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact--no matter how the State labels it--must be found by a jury beyond a reasonable doubt."). In *Blakely*, the State argued that there was no *Apprendi* violation because the relevant statutory maximum was not the fifty-three-month standard range provided by the sentencing scheme but the ten-year maximum established by the state for a class B felony. The Supreme Court rejected this position:

> Our precedents make clear . . . that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

*Blakely*, 124 S. Ct. at 2537 (emphasis in original) (internal citations omitted).

The Supreme Court found it unconstitutional for a state to circumvent a defendant's right to have a jury decide whether the essential elements of a crime have been proven beyond a reasonable doubt by labeling certain of the facts "elements of the crime" and others "sentencing factors." Consequently, the Supreme Court found that any factors under Washington's sentencing scheme that increase the upper bound on a judge's sentencing discretion are elements of the underlying crime that must be found beyond a reasonable doubt by a jury.

The dissenting justices raised numerous arguments regarding the likely consequences of the majority's decision, including its implications on the efficiency and fairness of the criminal justice system and the complexity and expense of requiring juries to determine the many sentence-enhancing factors currently determined by judges under sentencing guidelines schemes. The majority was unpersuaded that these practical consequences were of any moment when a constitutional right was at stake:

> Ultimately, our decision cannot turn on whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice. . . . As *Apprendi* held, every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment. Under the dissenters' alternative, he has no such right. That should be the end of the matter.

*Id.* at 2543 (emphasis in original).

In *Blakely*, the Supreme Court stated that "[t]he Federal Guidelines are not before us, and we express no opinion on them," *Id.* at 2538. Moreover, the Supreme Court specifically stated that it was not finding determinate sentencing schemes *per se* unconstitutional. "This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Id.* at 2540. In her dissent, however, Justice O'Connor indicated that she sees no meaningful distinction between Washington's sentencing scheme considered in *Blakely* and the Federal Sentencing Guidelines. "Washington's scheme is almost identical to the upward departure regime established by 18 U.S.C. § 3553(b) and implemented in USSG § 5K2.0. If anything, the structural differences that do exist make the Federal Guidelines more vulnerable to attack." *Id.* at 2549 (O'Connor, J., dissenting). Similarly, in his dissent, Justice Breyer stated that

"[p]erhaps the Court will distinguish the Federal Sentencing Guidelines, but I am uncertain how." *Id.* at 2561 (Breyer, J., dissenting).

The Tenth Circuit has not issued a decision on whether the *Blakely* rule applies to sentences under the Federal Guidelines. Other circuits have split on the applicability of *Blakely* to sentences imposed under the Federal Guidelines. *See United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004) (holding Federal Guidelines unconstitutional as applied to sentence enhancement based on facts not determined by jury); *United States v. Booker*, 375 F.3d 508 (7th Cir.) (same), *cert. granted*, 2004 WL 1713654 (2004), *but see United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004) (holding that *Blakely* does not extend to the Federal Guidelines); *United States v. Koch*, 383 F.3d 436 (6th Cir. 2004) (same). The Second Circuit took a third route and certified its questions regarding the applicability of the *Blakely* rule to guideline sentences to the Supreme Court. *See United States v. Penaranda*, 375 F.3d 238 (2d Cir. 2004). Most courts that have examined *Blakely*'s effect on sentences imposed under the Federal Guidelines have found certain applications of the Guidelines unconstitutional. *See United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004); *United States v. Booker*, 375 F.3d 508 (7th Cir.), *cert granted*, 2004 WL 1713654 (2004); *United States v. Leach*, 325 F. Supp.2d 557 (E.D. Pa. 2004); *United States v. Montgomery,* 324 F. Supp.2d 1266 (D. Utah 2004); *United States v. Toro*, 335 F. Supp.2d 268 (D. Conn. 2004); *United States v. Shamblin*, 323 F. Supp.2d 757 (S.D. W. Va. 2004).

In *United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004), the defendant appealed his 150 month sentence that was imposed after he pleaded guilty to knowingly conspiring to distribute methamphetamine. In post-submission briefing, the defendant argued that the imposition of his sentence violated the Sixth Amendment as interpreted in *Blakely* because the facts underlying the

calculation of his base offense level and his sentence enhancement for possession of a firearm in connection with the drug offense were not found by a jury beyond a reasonable doubt. The Ninth Circuit held that *Blakely*'s definition of statutory maximum applies to the determination of the base offense presumptive ranges under U.S.S.G. §2D1.1(c) of the guidelines and to the determination of the applicability of an upward enhancement under U.S.S.G. §2D1.1(b)(1). As a result, the Ninth Circuit held that the defendant's sentence, based on the district court's finding by a preponderance of the evidence of 1,603.60 grams of methamphetamine – despite the defendant's admission of only a detectable amount of methamphetamine – violated the defendant's Sixth Amendment right to have the facts underlying his sentence found beyond a reasonable doubt. In addition, the Ninth Circuit held that the *Blakely* rule's effect on the determination of a base offense level and an upward enhancement did not render the Federal Guidelines facially invalid.

In reaching its holding, the Ninth Circuit found that "there is no principled distinction between the Washington Sentencing Reform Act at issue in *Blakely* and the United States Sentencing Guidelines." *Id.* at 974.[1] The Ninth Circuit explained that, in *Blakely*, there were two state sentencing statutes at issue, one that set ten years as the maximum punishment for Blakely's second degree kidnaping offense and one that provided a "standard range" of 49 to 53 months for Blakely's offense. The trial court could exceed the standard range if it found a substantial and compelling reason justifying an exceptional sentence. The trial court found that Blakely had acted with "deliberate cruelty," one of the enumerated factors justifying an exceptional sentence. In ruling that the Sixth Amendment right to a jury trial rendered Blakely's exceptional sentence unconstitutional, the Supreme Court in *Blakely* did not focus on the ten year statutory maximum but rather on the

---

[1] The Seventh Circuit in *Booker* reached the same conclusion.

"standard range" of 49 to 53 months. The Supreme Court held that the 90 month sentenced imposed violated this principle because it was not justified "solely on the basis of facts admitted in the guilty plea" but rather involved judicial fact-finding of aggravating factors which increased the sentence.

The Ninth Circuit found that the defendant before it was "similarly subject to dueling 'statutory maximums.'" *Id.* at 975. Specifically, under 21 U.S.C. §841(b)(1)(C), the defendant faced a potential sentence of 0 to 20 years. Through its "implicit adoption" of U.S.S.G. §2D.1.1(c), however, Congress also provided "a differing range of presumptive sentences based on the quantity of drugs, including methamphetamine, as determined by the district judge or admitted by the defendant." *Id.* With the district judge's factual findings, the defendant faced a base offense level of 34, with a sentencing range of 151 to 188 months, and an additional two-level enhancement for possession of a firearm. Solely on the basis of the defendant's admission of distributing a detectable amount of methamphetamine, however, "without any additional findings," his base offense level would have been 12 with a sentencing range of 10 to 16 months. *Id.* (citing *Blakely*, 124 S. Ct at 2537). The Ninth Circuit found that "[t]his directly parallels the sentencing process held unconstitutional in *Blakely*." *Id.* at 976. The Ninth Circuit concluded that, although it had held in the past that "statutory maximum" for *Apprendi* purposes was the statute of conviction itself, "*Blakely*'s definition of 'statutory maximum' as 'the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*,' suggests that this conclusion was in error." *Id.* at 976 (citing *Blakely*, 124 S. Ct. at 2537) (emphasis in original).

The Ninth Circuit rejected the government's argument that, if the court found *Blakely* applicable to any facet of the defendant's sentence, the court must hold that the guidelines as a whole are unconstitutional. The Ninth Circuit explained that it was not invalidating either the base offense

levels in §2D1.1(c) or the two-level enhancement in §2D1.1(b)(1). Rather, the Ninth Circuit held that, "in determining a base offense level under §2D1.1(c) or an upward enhancement under §2D1.1(b)(1), in order to be consistent with *Blakely*, those determinations must be made by a jury beyond a reasonable doubt (or by a judge with proper jury waiver)." *Id.* at 980.

The Ninth Circuit further explained that there is a presumption in favor of severability "based on the idea that 'a court should refrain from invalidating more of the statute than is necessary' because '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Id.* at 981 (citation omitted). The issue in determining severability is legislative intent. *See id.* The Ninth Circuit stated that, in enacting the guidelines, Congressional intent was to "eliminate the uncertainty that accompanied indeterminate sentencing." *Id.* The Ninth Circuit found that this goal would be met "even if the requirements for judge fact finding by a preponderance of the evidence are severed as violating the Sixth Amendment in circumstances like those confronting [the defendant]." *Id.* Moreover, the Ninth Circuit noted that declaring the guidelines unconstitutional as a whole "would do far greater violence to Congress' intent than [excising] the unconstitutional procedural requirements." *Id.* at 982. The Ninth Circuit expressed its reluctance "to establish by judicial fiat an indeterminate sentencing scheme." *Id.*

The Ninth Circuit was not persuaded by the government's argument that severance will mean that the guidelines will not function in the same manner as they did pre-*Blakely*. The Ninth Circuit explained, "the test for severability is not . . . whether the statute will function identically to the way it operated before the objectionable provisions were severed. If this actually were the test for severance, severance would never be appropriate." *Id.*

In addition, the Ninth Circuit rejected the government's contention that severance would undermine uniformity because even though similar defendants may have committed similar crimes, "'[it] would likely be impossible, as a practical matter, to charge and prove to a jury beyond a reasonable doubt *all* enhancing factors in *all* cases.'" *Id.* The Ninth Circuit explained that the government's concern that it may be less able in one case to fulfill its burden of persuasion than in another case also existed when district judges determined material sentencing facts on the basis of a preponderance of the evidence standard. Moreover, the Ninth Circuit explained that although the guidelines' goal of uniformity "may be elusive in some instances, we are reluctant, in light of Congress' declared goals, to abandon completely the Sentencing Guidelines in this case." *Id.* The Ninth Circuit concluded that "preserving the essential provisions of the Guidelines that are not constitutionally infirm will effectuate Congressional intent by preventing a return to the days of indeterminate sentencing." *Id.* at 983.

The Court agrees with the reasoning and conclusions of the Ninth Circuit in *Ameline*. This Court finds that the rule of *Blakely* must be applied to the Federal Guidelines because there is no material difference between the state guidelines at issue in *Blakely* and the Federal Guidelines. The Court further finds that those procedural aspects of the Federal Guidelines that violate the Sixth Amendment are severable. Accordingly, it is appropriate to apply the remaining guidelines, *i.e.*, the guidelines and enhancements that are based solely on facts found by a jury or admitted by Defendant. This approach furthers the Congressional goal of promoting a measure of uniformity in sentencing and is consistent with the principle of statutory construction that courts should save and not destroy the law by construction.

## II.     **Application of *Blakely* to the Instant Case**

Under *Blakely*, "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." *Blakely*, 124 S. Ct. at 2541.  The government argues that Defendant Ruiz's admissions under oath during his plea hearing amount to stipulations to the relevant facts necessary to support enhancements under §2D1.1(b)(5)(A) and §2D1.1(b)(5)(B). The government points to the following dialogue between the Court and Defendant Ruiz during the plea hearing:

> THE COURT:  And you said "manufactured."   Does that mean that you cooked or used a chemical process to make an illegal drug?
>
> DEFENDANT RUIZ:  That's the way the law says, yes.
>
> THE COURT:  And you intended to do that?
>
> DEFENDANT RUIZ: Yes.
>
> THE COURT:  And you had the chemicals with which to do it?
>
> DEFENDANT RUIZ:  Right.
>
> THE COURT:  You knew it was against the law?
>
> DEFENDANT RUIZ:  Yes.

Transcript of Plea Hearing at 19.  John Butcher, counsel for Defendant Ruiz, further stated on the record that they did not deny that the government would have competent evidence to support the conviction or that Mr. Ruiz was engaged in the manufacture of methamphetamine with Ms. Edwards. *Id.* at 21.

The government admits that every act of manufacturing methamphetamine is not a *per se* violation of the Resource Conservation and Recovery Act or the Comprehensive Environmental

Response, Compensation and Liability Act and thus that every act of manufacturing methamphetamine does not warrant an enhancement under §2D1.1(b)(5)(A). Similarly, the government admits that not every methamphetamine laboratory warrants an enhancement under §2D1.1(b)(5)(B). Despite these admissions, the government nonetheless argues that both enhancements properly may be applied solely on the basis of Defendant Ruiz's admission that he used a chemical process to manufacture methamphetamine. In essence, the government is arguing that Defendant's admission to the use of the chemical process is alone sufficient to allow for the enhancements because the government's experts have determined that the use of the chemical process creates hazardous waste materials, creates certain gases, and creates a substantial risk of harm to human life or the environment. This argument, however, is no different from arguing that every act of manufacturing methamphetamine allows for a *per se* application of the enhancements. As the government itself admits, such an argument would be improper. Moreover, the government ignores the fact that without the government's experts' determinations as to the effects of the chemical process, Defendant's admission to the use of the chemical process would be insufficient to establish a basis for the enhancements. The government's experts' determinations, however, are not facts that have been determined beyond a reasonable doubt by a jury or admitted by Defendant Ruiz. The government's proposed application of the enhancements necessarily would require the Court to take into consideration the government's experts' determinations. This is clearly prohibited by *Blakely*. Accordingly, the government has failed to demonstrate any way in which the Court's application of the requested enhancements would not violate *Blakely.*

      Application of the enhancement under §2D1.1(b)(5)(A) requires a violation of at least one of the acts listed in Application Note 19. Defendant Ruiz did not admit to a violation of any such acts

or to the release into the environment of a hazardous or toxic substance. Similarly, application of the enhancement under §2D1.1(b)(5)(B) requires a finding of substantial risk of harm to human life or the environment. Defendant Ruiz did not admit to facts establishing a substantial risk of harm to human life or the environment. Indeed, it would be virtually impossible to construe any of Defendant Ruiz's statements at the plea hearing as admissions of the facts necessary to support the enhancements as Defendant Ruiz had no notice of these enhancements at the time of the plea hearing. For these reasons, *Blakely* precludes application of the enhancements to Defendant Ruiz.

### III.   Alternative Sentencing

Defendants have filed a Memorandum Regarding Alternative Sentencing requesting that the Court impose only one sentence for each Defendant in this case. Defendants argue that alternative sentencing is neither required nor appropriate. First, Defendants argue that, because the Court has found that *Blakely* is applicable to the Federal Guidelines and precludes enhancements to a defendant's sentence unless those enhancements are based on factual findings made beyond a reasonable doubt, it would be improper to announce an alternative sentenced based on what would be an unconstitutional application of the Federal Guidelines, *i.e.*, a sentence applying enhancements based on facts found by a preponderance of the evidence. Similarly, Defendants argue, it is nonsensical for the Court to impose a sentence without regard to the Federal Guidelines at all, as the Court has found that *Blakely* does not render the Federal Guidelines unconstitutional as a whole. The Court agrees and will not impose alternative sentences in this matter.

### IV.   Alleged Discovery Violations

Defendants contend that there is no mention of the possible application of the 2-level enhancement pursuant to §2D1.1(b)(5)(A) in the plea agreement. Further, Defendants contend that

there was no claim in any of the discovery before the entry of the plea that any of Defendants' actions violated one of the listed acts in Application Note 19 to §2D1.1. Thus, Defendants conclude, neither the discovery nor the plea agreement provided Defendants with adequate notice of the application of such a technical enhancement. Accordingly, it is Defendants' position that it would be improper to enhance their sentences based on any late discovery.

The government argues that it complied with all of its discovery obligations. Specifically, the government states that it provided all of the documents that it had in its possession at the time that the plea agreement was being negotiated. According to the government, the disputed discovery which it did not provide before entry of the plea agreement consists of documents that the government obtained from Envirosolve. These documents, the government explains, were not relevant to its case in chief but rather only became relevant at the sentencing phase and were produced approximately six months ago.

As set forth above, in determining Defendants' sentences, the Court will not apply the enhancements as set forth in the PSR and as requested by the government. Accordingly, at this point, the Court need not reach the issue of whether alleged discovery violations preclude the application of these enhancements. The Court does not find it appropriate to impose sanctions on the government for the alleged discovery violations.

## V.     **Defendants' Additional Objections to Enhancements Under §2D1.1(b)(5)(B) and §3C1.2**

Defendants argue that the enhancements proposed by the government under §2D1.1(b)(5)(B) and §3C1.2 are not properly before the Court because the government never filed informal or formal objections to the PSR and thus has not complied with Rule 32(f) of the Federal Rules of Criminal

Procedure. Since the government filed no objections, Defendants argue, Probation has not had an opportunity to examine the propriety of these enhancement and Defendants have no mechanism to object to them. As set forth above, in determining Defendants' sentences, the Court will not apply the enhancements as set forth in the PSR and as requested by the government. Accordingly, at this point, the Court need not reach the issue of whether the enhancements proposed by the government are properly before the Court.

## **CONCLUSION**

The Court finds that the rule of *Blakely* applies to sentencing under the Federal Guidelines. *Blakely*'s definition of "statutory maximum" applies to the determination of enhancements under §2D.1(b) of the guidelines. This determination, in order to be consistent with *Blakely*, must be made by a jury beyond a reasonable doubt or admitted by the defendant. Here, the enhancement under §2D1.1(b)(5)(A) was determined by Probation based on findings by a preponderance of the evidence. Similarly, the enhancement proposed by the government under §2D1.1(b)(5)(B) is supported only by facts that could be established by a preponderance of the evidence. Under *Blakely*, it would violate each Defendant's Sixth Amendment rights for this Court to increase his or her offense level and determine his or her sentencing range on findings by a preponderance of the evidence.

The Court further finds that those procedural aspects of the federal guidelines that violate Defendants' Sixth Amendment rights are severable. Accordingly, it is appropriate to apply the remaining guidelines (that is, the guidelines and enhancements that are based solely on facts found by a jury or admitted by the defendant). Under this approach, each Defendant's total adjusted offense level must be determined based only upon his or her admitted conduct, *i.e.*, the manufacture of methamphetamine.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion Regarding Sentencing Procedure **[Doc. No. 49]** is hereby **GRANTED**.

Dated this 8th day of November, 2004.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:
Elaine Ramirez

Attorney for Defendant Ruiz:
John Butcher

Attorney for Defendant Edwards:
Judith Rosenstein